UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TANIKA BEAULIEU,<br><br>Plaintiff,<br><br>v.<br><br>NEWQUEST MANAGEMENT OF ILLINOIS, LLC,<br><br>Defendant. | Case No. 17-cv-05672<br><br>Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tanika Beaulieu sued her employer, NewQuest Management of Illinois, LLC ("NewQuest"), bringing claims for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Before the court is NewQuest's motion for summary judgment [70]. For the following reasons, the motion is granted.

**Background**

In deciding NewQuest's motion for summary judgment, the court views the evidence in the light most favorable to Beaulieu. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court liberally construes Beaulieu's *pro se* filings and draws all reasonable inferences in her favor.

Much of Beaulieu's response does not comply with Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(b)(3), because it includes a number of unsupported factual assertions and argumentative responses. *See* Fed. R. Civ. P. 56(c)(1) (requiring any party asserting or disputing a fact to cite "particular parts of materials in the record" or "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact"); Local Rule 56.1(b)(3) (requiring any party opposing a motion for summary judgment to support any asserted factual disagreements with "specific references to the affidavits, parts of the record, and other supporting materials relied upon"). (L.R. 56.1 was amended on February 18, 2021; the court applies the version in effect when the current motion was briefed.)

The Seventh Circuit "has repeatedly recognized that district courts may require exact compliance with their local rules," including "local rules governing summary judgment." *Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020). Even pro se litigants must comply with Local Rule 56.1. *See Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even pro se litigants must follow procedural rules"). Beaulieu's generalized denials and assertions do not create disputed questions of fact to the extent they lack evidentiary support or citations to the record.

However, "a nonmovant's failure . . . to comply with Local Rule 56.1 does not automatically result in judgment for the movant." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (citation omitted). As the moving party, NewQuest bears the burden of showing it is entitled to summary judgment. With this in mind, the court turns to the parties' submissions. The following facts are undisputed unless otherwise noted.

NewQuest is a healthcare management company. DSOF, [71] ¶ 2.[1] Plaintiff Tanika Beaulieu, who is African American, began working for NewQuest in Chicago as a Customer Service Representative ("CSR") in August 2014. [71] ¶¶ 1, 5; [12] at 4–5. This job involved assisting NewQuest's members, providers, and vendors over the phone. [71] ¶ 6. After completing training, Beaulieu reported to Juan Salas. [71] ¶ 8. In 2015, Beaulieu lodged a complaint generally about Salas's managerial style being condescending with Salas's supervisor, Claudia Vasquez. PSOF, [78] ¶ 4; [74] at 3–4 (sealed).[2] On April 13, 2015, Vasquez switched Beaulieu to a different supervisor, Francine Dower, and instructed Salas to communicate with Beaulieu only through Vasquez. [78] ¶ 7; Pl.'s Resp. DSOF, [76] ¶ 8; [74] at 4 (sealed).

By late 2015, NewQuest had three different queues for CSR calls: member calls, provider calls, and Spanish-speaking calls. [71] ¶ 14; [76] ¶ 14. Beaulieu was assigned to the provider queue. [71] ¶ 15. Beaulieu testified that provider calls took longer than member calls. [73-1] at 26–29.

---

[1] Bracketed numbers refer to docket entries and are followed by the page and paragraph number, as appropriate. Page number citations refer to the CM/ECF page number. Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for NewQuest's Statement of Facts [71], "PSOF" for Beaulieu's Statement of Facts [78], "Pl.'s Resp. DSOF" for Beaulieu's response to NewQuest's Statement of Facts [76], and "Def.'s Resp. PSOF" for NewQuest's response to Beaulieu's Statement of Facts [87].

[2] When the court refers to a sealed document, it attempts to do so without revealing any information that could reasonably be deemed confidential. The court discusses information from these documents only to the extent necessary to explain the path of the court's reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

In September, Beaulieu unsuccessfully interviewed with Salas and Dower for a new position as a Senior Analyst. [71] ¶ 27; [76] ¶ 27. That position was given instead to Denise Webb-Williams, who is also African American. [71] ¶ 30; [73-1] at 31.

According to Salas, NewQuest sometimes used a lottery system the day before a holiday to determine which employees could leave early while enough other employees remained to meet contractual needs. [71] ¶¶ 17–20. Between Christmas Eve and New Year's Eve 2015,[3] Luis Portela informed the NewQuest staff that management would monitor phone volume and communicate the potential for early departures accordingly. [76], Pl.'s Resp. DSOF ¶¶ 18–20. Beaulieu testified that subsequently, Dower sent an instant message informing the staff that they would send people home from the members queue based on call volume. [73-1] at 10. According to Beaulieu, most of the Hispanic CSRs were allowed to leave. Of the five remaining employees, four (including Beaulieu) were African American. [73-1] at 8, 10.

In February 2016, Beaulieu stayed home from work one day because of inclement weather conditions. NewQuest allowed the employees that did come to work that day to leave early. Beaulieu received an attendance "occurrence" (a type of write-up) for her absence. Portela refused to waive this occurrence, stating that employees were authorized only to leave early, not to stay home entirely. [73-1] at 10–11.

In March, NewQuest approved Beaulieu's request to take a day off for a medical appointment. When Beaulieu came to work the following day, Dower mistakenly told her she was being let go because she was a "no show." That same day, when Beaulieu told NewQuest's Human Resources office that Dower was mistaken, NewQuest immediately corrected Dower's mistake and reassured Beaulieu that she would not be let go. [73-1] at 36–37. Beaulieu nonetheless resigned from her position. [73-1] at 37.

In August 2017, Beaulieu brought this action against NewQuest. Her amended complaint alleges employment discrimination based on her age, race, national origin, and sex. NewQuest moved to dismiss, and the court granted that motion, dismissing all claims except Beaulieu's race discrimination and retaliation claims. [45]. NewQuest filed the present motion for summary judgment. [70]. The case was reassigned to this judge. [83].

---

[3] The record is unclear whether this took place on only one of the two holidays or on both. Whether this occurred once or twice does not impact the court's analysis.

**Discussion**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation and footnote omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [the non-moving party's] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

**I.   Race Discrimination**

NewQuest first moves for summary judgment on Beaulieu's race discrimination claim. Title VII makes it unlawful for an employer to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). To prevail, Beaulieu must prove three elements: (1) she is a member of a protected class; (2) she "has been the subject of some form of adverse employment action (or that [she] has been subjected to a hostile work environment)"; and (3) NewQuest took this adverse action on account of Beaulieu's membership in the protected class. *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013)). To survive summary judgment, she must present evidence that collectively "would permit a reasonable factfinder to conclude that [her] race . . . caused the discharge or other adverse employment action." *Abrego*, 907 F.3d at 1012 (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).[4]

---

[4] Neither party relies on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because that burden-shifting framework is "merely one way of culling the relevant evidence," *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360,

NewQuest argues that Beaulieu's claim fails at the outset because Beaulieu did not suffer an adverse employment action. For purposes of her discrimination claim, a materially adverse employment action is an action that involves "a significant change in employment status," *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (quoting *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 235 (7th Cir. 2014)), and is "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). "Such changes can involve the employee's current wealth, his career prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace." *Boss*, 816 F.3d at 917. Adverse employment actions "generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011).

Beaulieu points to a variety of different workplace incidents, but for reasons explained below, there is no genuine dispute that each of these incidents either does not rise to the level of an "adverse employment action" or was not taken on account of Beaulieu's race, or both.

### A. Critical Comments About Beaulieu's Performance

First, Beaulieu testified that Salas made condescending comments about her performance in front of her coworkers. [73-1] at 4, 16–17. Salas also told her she was not moving at a proper pace and needed further training during private coaching sessions. [73-1] at 17. However, "a negative evaluation or admonishment by an employer does not rise to the level of an adverse employment act." *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004). "There must be some tangible job consequence accompanying the reprimand to rise to the level of a material adverse employment action; otherwise every reprimand or attempt to counsel an employee could form the basis of a federal suit." *Id.*; *see also Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005); *Threatt v. Donovan*, 380 F. App'x 544, 548 (7th Cir. 2010).

### B. Work Assignment

Beaulieu also points to her assignment to the provider call queue, which resulted in her taking longer calls than those in the member queue. "[H]arder work

---

368 (7th Cir. 2019) (citation and internal quotation marks omitted), the court simply evaluates the evidence as a whole under the standard explained in *Ortiz*, 834 F.3d at 765.

assignments do not constitute an adverse employment action." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007). Because Beaulieu's assignment to the provider call queue involved "no reduction in pay and no more than a minor change in working conditions," it cannot support a discrimination claim. *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996).

### C. Failure to Pay a Bonus

Beaulieu did not receive a bonus in 2014 or 2015. She testified that she spoke with several other African American CSRs, none of whom received a bonus, and at least one Hispanic CSR who did receive a bonus. [73-1] at 11–12. She also did not receive a bonus that was awarded at some point after she resigned. [73-1] at 38. However, "an adverse employment action does not include an employer's refusal to grant an employee a discretionary benefit to which she is not automatically entitled . . . ." *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1033 (7th Cir. 2004). NewQuest's decision not to pay Beaulieu a bonus was not an adverse action because Beaulieu has not presented any evidence that NewQuest's bonuses were not "wholly discretionary on the part of the employer." *Farrell v. Butler Univ.*, 421 F.3d 609, 614 (7th Cir. 2005) (quotations and citation omitted); *see also Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008).

Nor has Beaulieu put forth evidence from which a reasonable jury could find that NewQuest did not pay her bonuses because of her race. According to Salas, four of the nine CSRs who received a bonus in 2015 and 2016 were African American. [71] ¶ 35. This is consistent with Beaulieu's anecdotal account of the bonus distribution (that one Hispanic CSR did receive a bonus and several African American CSRs, including Beaulieu, did not), so there is no material dispute of fact. Without additional context, the facts in the record about NewQuest's bonuses do not allow a reasonable inference of race discrimination.

### D. Excused Absences and Time Off

The events Beaulieu cites related to her absences and time off likewise do not rise to the level of adverse employment actions. For example, NewQuest's policy requiring Beaulieu and some of her coworkers to stay at the office while other employees were permitted to leave early during the winter holidays of 2015 cannot reasonably "be characterized as materially adverse." *See Schmidt v. Canadian Nat. Ry. Corp.*, 232 F. App'x 571, 575 (7th Cir. 2007) (the fact that plaintiff's boss "made him stay late before one holiday weekend when others were permitted to leave early" could not "possibly be characterized as materially adverse"). Further, Beaulieu's February 2016 attendance write-up for her absence due to inclement weather is not an adverse employment action without evidence that it had "any tangible consequences." *Johnson v. Johnson & Johnson*, 67 F. Supp. 3d 1001, 1010 (N.D. Ill. 2014); *see also Burrell v. United Parcel Serv., Inc.*, 163 F. Supp. 3d 509, 526 (N.D. Ill. 2016) (an attendance warning was not an adverse employment action

where it "did not result in any suspension, demotion, termination, loss in pay, loss of benefits, or any other change in [plaintiff's] employment"). Beaulieu does not cite any such consequences.

And while Beaulieu's supervisor, Francine Dower, erroneously told Beaulieu that Beaulieu would be terminated for missing work, there is no apparent link between that incident and the previous incidents or between that incident and Beaulieu's race. Moreover, NewQuest promptly corrected this mistake—without actually terminating or disciplining Beaulieu—so no adverse action came of that incident either. *See Matthews v. Wisconsin Energy Corp. Inc.*, 534 F.3d 547, 559 (7th Cir. 2008) (defendant company's erroneous denial of plaintiff's employment status not an "adverse" action where the company "corrected its mistake" after the error was brought to its attention); *see also, e.g., Simkus v. United Airlines*, No. 13 C 4388, 2016 WL 4765706, at *5 (N.D. Ill. Sept. 13, 2016) ("An error in compensation that is corrected in little more than a week is not an adverse action.").

### E. Failure to Promote

Beaulieu testified that NewQuest failed to promote her to a new position. In September 2015, Beaulieu interviewed for a position as a Senior Analyst. The interview was conducted by Salas and Francine Dower. Ultimately, the position was given to another African American woman, Denise Webb-Williams. [73-1] at 31; [71] ¶ 30.

"Failure to promote can be an adverse action giving rise to liability." *Hill v. Potter*, 625 F.3d 998, 1003 (7th Cir. 2010) (citing *Jackson v. County of Racine*, 474 F.3d 493, 501 (7th Cir. 2007)). However, the record does not support a reasonable inference of race discrimination connected to NewQuest's decision to promote Webb-Williams rather than Beaulieu to the senior analyst position. To survive summary judgment on a failure to promote claim, Beaulieu must present "sufficient direct or circumstantial evidence that [the employer's] promotion decisions were intentionally discriminatory." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 891 (7th Cir. 2016) (citing *Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014)).

Beaulieu argues that Webb-Williams, the employee who got the job, was not qualified for the position. In support of her argument, Beaulieu attaches Webb-Williams's May 2015 CSR Monthly Performance Evaluation, which shows that Webb-Williams received a grade of C (on an A–D scale) that month. [74] at 32 (sealed). The significance of this performance evaluation, which is dated four months before Beaulieu interviewed for the position in September 2015, is unclear. And Beaulieu's own testimony cannot create a material dispute of fact on the issue unless it is based on personal knowledge. *See Formella v. Brennan*, 817 F.3d 503, 512 (7th Cir. 2016); *see also Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014) (personal knowledge "does not include speculating as to an employer's state of

mind, or other intuitions, hunches, or rumors"). Here, Beaulieu has not shown she has any firsthand knowledge about Webb-Williams' qualifications for the position.

Beaulieu also testified that after the interview ended, she heard Salas say something "along the lines of, 'That's your people,' or, 'Them your people,'" followed by laughter from Salas and Dower, who is African American. [73-1] at 30. Salas denies this allegation. [73-2] at 9 ¶¶ 56–57. However, it is undisputed that NewQuest gave the position to someone of the same race as Beaulieu. *See Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 858 (7th Cir. 2019) (noting that one way to prove discriminatory failure to promote involves showing that "the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff"); *see also, e.g.*, *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 128 (2d Cir. 2013) (affirming grant of employer's motion for summary judgment where "one of the sergeants promoted to lieutenant over [plaintiff] was also Hispanic"); *Spencer v. Sargent*, 220 F.3d 588, 2000 WL 960701, at *1 (5th Cir. 2000) (table) (similar); *Harrison v. Fulton Cty., Georgia*, 735 F. App'x 579, 588 (11th Cir. 2018) (per curiam) (similar). No reasonable jury could infer from these facts that NewQuest decided not to promote Beaulieu because of her race.

### F. Disparate Pay

Beaulieu also argues she was paid less than an employee of a different race. Beaulieu testified that she saw the pay stub of Melissa Anderson, a Hispanic CSR, and noticed Anderson had a higher base rate. [73-1] at 12–14. Disparate pay is generally adverse action. *See Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1030–31 (7th Cir. 2003) (plaintiff established that "she suffered an adverse employment action, namely a paycheck reflecting her 1997 salary which was determined with a lower raise than that given her coworkers"); *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004) (denial of a raise constitutes a materially adverse employment action "if a raise would have been an expected element of the employee's salary and its denial cuts the salary in real terms").

There is, however, no evidence this pay disparity was based on race. Anderson had worked at NewQuest longer than Beaulieu had. [73-1] at 13 (dep. tr. p. 47:11-13). According to Salas, NewQuest's Human Resources and Compensation Departments set CSR salaries. [73-2] at 5 ¶ 23. Luis Portela, the department director, and NewQuest's senior leadership determined bonuses and merit increases. [71] ¶¶ 33–34. According to Salas, merit increases were based on a number of factors that included the CSR's monthly scorecards, tenure, whether the employee received a promotion in the form of "band progression," and "market value." [73-2] at 6 ¶ 26.[5] NewQuest's pay records show that Anderson received a

---

[5] Beaulieu notes that Salas signed a CSR scorecard. *See* [74] at 32 (sealed). However, she does not produce any evidence to contradict Salas's account of how the CSR scorecard points are derived. [73-2] at 3 ¶¶ 12–17; [71] ¶ 25 (noting that Salas did not have the

"band progression" pay increase, as well as merit increases that slightly exceeded Beaulieu's. [74] at 70–71 (sealed). The evidence in the record thus falls short of showing "equal work for unequal pay, with the protected class as the distinguishing factor." *Poullard v. McDonald*, 829 F.3d 844, 854 (7th Cir. 2016). Without any evidence that race—rather than a combination of seniority, "band progression," and merit increases—caused Anderson's pay to be higher than Beaulieu's, a reasonable jury could not conclude from the evidence as a whole that NewQuest engaged in discriminatory pay practices. *See Ortiz*, 834 F.3d at 765.

### G. Constructive Discharge

Finally, Beaulieu cannot rely on her own resignation to support a race discrimination claim. Beaulieu resigned from her position in March 2016, after NewQuest told her she was being let go but subsequently corrected its mistake. [73-1] at 36–37; [74] at 11–12 (sealed). Because Beaulieu voluntarily resigned, her resignation qualifies as an adverse action only if she was "constructively discharged." *Weihaupt v. Am. Med. Ass'n*, 874 F.2d 419, 425–26 (7th Cir. 1989). Beaulieu's pleadings do not make clear whether she is asserting constructive discharge. *See* [80] at 6 ("Due to health scares and being told that I was being fired I submitted my resignation letter."). Regardless, Beaulieu has not presented sufficient evidence to support such a claim.

At a minimum, Beaulieu would need to show that the workplace incidents discussed above had the cumulative effect of subjecting her to a hostile work environment that caused her to resign. *See Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 650 (7th Cir. 2011) ("Establishing constructive discharge is more difficult than establishing a hostile work environment. The failure of the latter thus dooms the former.").[6] "To prove that an employment environment was actionably hostile, a plaintiff must show that (1) [she] was subject to unwelcome harassment; (2) the harassment was based on race (or another protected category); (3) the harassment was severe or pervasive to a degree that altered the conditions of employment and created a hostile or abusive work environment; and (4) there is a basis for employer liability." *Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 636 (7th Cir. 2019) (quotations omitted).

---

ability to change a CSR's quality assurance score). She points out that Salas manually inputs information into the system, "which means he has the ability to make it look the way he wants," [76] ¶ 25, but produces no evidence that Salas actually manipulated or falsified any aspect of a CSR scorecard.

[6] A plaintiff can alternatively show constructive discharge "when an employer acts in a manner that would make clear to a reasonable employee that she will be immediately fired if she does not resign." *Fields v. Bd. of Educ. of City of Chicago*, 928 F.3d 622, 625 (7th Cir. 2019). However, Beaulieu does not argue NewQuest took any such action here.

9

While "a workplace need not be hellish to constitute a hostile work environment, a hostile work environment must be so pervaded by discrimination that the terms and conditions of employment are altered." *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) (internal quotations, citations, and alteration omitted). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

No reasonable jury could decide that Beaulieu was subject to a hostile work environment. At most, the record suggests that some of Beaulieu's supervisors were blunt, uncharitable, and rude. For example, in addition to Salas's admonishments and critiques of Beaulieu's performance, Beaulieu testified that Salas once publicly asked Beaulieu where she had been when she returned from the bathroom, repeatedly announced that she had been in the bathroom, and told her: "Next time you wait until you get off the clock to go to the bathroom." [73-1] at 21–22. Beaulieu also testified that Salas and Luis Potelo, the Director of Customer Service, sometimes sat or stood uncomfortably close to her, and briefly came into physical contact with her (placing a hand on Beaulieu's shoulder or back) when they did so. *See* [73-1] at 4, 5, 17. But these discourteous interactions do not suggest a pattern of harassment so "severe or pervasive [that it] altered the conditions of employment." *Gates*, 916 F.3d at 636. Incidents of "general hostility and comments" are not sufficiently severe or pervasive to support a claim. *Griffin*, 356 F.3d at 829 (comments that plaintiff was a "bad influence" at office meetings over a two month period "may have created an 'unpleasant' environment" but were not an adverse employment action). The totality of the circumstances does not rise to the level of a hostile work environment as described by Seventh Circuit caselaw. *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 941 (7th Cir. 2007) ("[M]inor or isolated incidents are generally insufficient to rise to the level of objectively offensive conduct. By contrast, sustained physical contact can raise otherwise merely objectionable conduct to the level of objectively offensive conduct."); *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 463–64 (7th Cir. 2002) (two brief incidents of a supervisor rubbing the plaintiff's back, "although inappropriate behavior in the workplace, do not constitute by themselves actionable harassment under Title VII"); *Adusumilli v. City of Chicago*, 164 F.3d 353, at 361–62 (7th Cir. 1998) (ambiguous comments, staring, attempts to make eye contact, and four isolated brief incidents of unwanted touching were insufficient to survive summary judgment); *Weiss v. Coca-Cola Bottling Co. of Chi.*, 990 F.2d 333, 337 (7th Cir. 1993) (supervisor "put[ting] his hand on [plaintiff's] shoulder several times" and other incidents did "not meet the standard for actionable sexual harassment"); *Brown v. Chicago Transit Auth.*, No. 17-cv-08473, 2020 WL 777296, at *5 (N.D. Ill. Feb. 14, 2020) (supervisor's instruction "to never use that bathroom again" was "troubling" but "not a material adverse employment action"); *Williams v. Univ. of Chicago Med. Ctr.*, No. 11 C 9015, 2014 WL 4724378, at *7 (N.D. Ill. Sept. 23, 2014).

While a "severe episode" that occurs "as rarely as once" and a "relentless pattern of lesser harassment" both may violate Title VII, *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 951 (7th Cir. 2005), here, the incidents were neither severe nor pervasive. Moreover, there is no indication in the record that these events were related to Beaulieu's race. *See id.* at 950. A hostile work environment or constructive discharge claim therefore cannot survive summary judgment.

\* \* \*

For the reasons above, NewQuest's motion is granted as to Beaulieu's race discrimination claim.

## II. Retaliation

NewQuest is also entitled to summary judgment on Beaulieu's retaliation claim. Title VII prohibits retaliation against protected activity. *See* 42 U.S.C. § 2000e-3(a). Beaulieu supports both her discrimination and retaliation claims with the same set of facts and does not clarify which events she believes were retaliatory, as opposed to discriminatory. Discrimination claims and retaliations claims "are legally distinct theories with different elements. At summary judgment, though not necessarily in a complaint, a plaintiff needs to spell out these distinct theories separately, at least to the extent that the brief gives the district judge fair notice that the theory is being asserted." *Hackett v. City of S. Bend*, 956 F.3d 504, 509 (7th Cir. 2020). Nonetheless, the court construes Beaulieu's response liberally and addresses whether her evidence could sufficiently support a retaliation claim.

To survive summary judgment, Beaulieu must provide sufficient evidence that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) the adverse action was motivated by the protected activity. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). Ultimately, she must show that her protected activity was the but-for cause of the adverse action. *See id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

First, Beaulieu must have engaged in a protected activity, such as complaining about discrimination. Informal complaints are enough. *See Davis v. Time Warner Cable of S.E. Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011) (informal complaints can constitute protected activity for purposes of Title VII retaliation claim). However, the complaint must allege that the discrimination occurred because of the plaintiff's membership in a protected class. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (holding that complaining in general terms of discrimination or harassment is insufficient to constitute protected activity for purposes of Title VII retaliation). Beaulieu testified that she complained about Salas' behavior to Vasquez and mentioned that she believed Salas was "racist

11

towards [her]." [73-1] at 21.[7] This is sufficient, because a plaintiff must only have "a sincere and reasonable belief that [she] is opposing an unlawful practice." *Lord*, 839 F.3d at 563. Beaulieu's internal complaints satisfy the first element of a retaliation claim.

Next, Beaulieu must show that she suffered an adverse employment action. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006); *see also Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) ("Federal law protects an employee only from retaliation that produces an injury."). However, the adverse employment action standard for a retaliation claim is broader than the standard for discrimination claims. *Burlington*, 548 U.S. at 67. "[A] plaintiff must only show that the employer's action would cause a reasonable worker to be dissuaded from making or supporting a charge of discrimination." *Chaib v. Indiana*, 744 F.3d 974, 986–87 (7th Cir. 2014) (quotations omitted), *overruled on other grounds by Ortiz*, 834 F.3d 760.

For the reasons discussed above, Beaulieu did not suffer an "adverse action" from (1) her assignment to the provider call queue, (2) being required to work late on Christmas Eve or New Year's Eve 2015, (3) the February 2016 attendance write-up, or (4) her supervisor's erroneous statement that Beaulieu would be terminated. Even if these events were frustrating and unpleasant, they "had no effect" on Beaulieu's "compensation or career prospects," and did not substantially alter her conditions of employment. *Poullard*, 829 F.3d at 856–57; *see also id.* at 856–59 (explaining that "threatening statement[s]," "threat[s] of disciplinary action," and "letter[s] of admonishment" are "not enough to support a claim for retaliation").

In addition to these events, as discussed above, Beaulieu alleges that Salas rudely corrected and unnecessarily critiqued Beaulieu's performance on several occasions. But Beaulieu's pleadings do not make clear which if any of the incidents discussed above occurred after Beaulieu's complaint to Vasquez. Beaulieu testified that she experienced mistreatment by Salas "through the time that [she] left regardless [of whether] he was [her] supervisor or not," [73-1] at 5, but her response does not set forth a clear timeline of events. In any case, the record does not establish that Salas's behavior amounted to harassment that is "serious enough to dissuade a reasonable employee from engaging in protected activity." *Poullard*, 829 F.3d at 858 (explaining that harassment must be "objective[ly]" severe or pervasive in order to support a retaliation claim).

Finally, even if Beaulieu had suffered an adverse action sufficient to support a retaliation claim, she has not shown that her complaint was a but-for cause of any potentially retaliatory events. Among other things, circumstantial evidence

---

[7] That complaint appears to have occurred somewhere around April 2015. [78] ¶ 4; [74] at 3–4 (sealed).

allowing a jury to infer retaliation may include: "(1) suspicious timing, ambiguous statements of animus or behaviors; (2) evidence that similarly situated employees were treated differently; or (3) a pretextual reason for adverse employment action." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 973 (7th Cir. 2012). Beaulieu's only evidence of causation is that the alleged discrimination either continued or increased after she complained to Vasquez, meaning that her argument is based solely on suspicious timing. "Under most circumstances, suspicious timing alone does not create a triable issue on causation." *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014). Here, the events span a wide time frame, and nothing about the sequencing suggests that any of the events would not have occurred if Beaulieu had not complained to Vasquez. This is not the "rare case where temporal proximity alone creates a triable issue on causation." *Milligan v. Bd. of Trs. of S. Illinois Univ.*, 686 F.3d 378, 390 (7th Cir. 2012). The court grants the motion for summary judgment on Beaulieu's retaliation claim.

## Conclusion

The motion for summary judgment [70] is granted.

Date: September 30, 2021  /s/ Martha M. Pacold

13